FANCHER v. BONFILS et al.

POOR v. ZIMMERMAN.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. MORTGAGES—RELEASE—DECREE OF FORECLOSURE—APPORTIONMENT.

An owner of land divided into lots agreed to sell several of them. The whole tract was mortgaged, as were also lots B and C. To enable the owner to make the sale, the mortgagee of the entire tract, for a consideration, released lot B, and the mortgagee of lots B and C agreed to release lot B on payment of a proportion of his mortgage within a year. The mortgage on lots B and C was foreclosed as a whole, and a surplus remained after paying the judgment, which the mortgagee of the entire tract claimed, because the decree of foreclosure, to which the purchaser was a party, made no apportionment as between lots B and C, and such decree determined the purchaser's rights, and precluded him from claiming the amount as surplus over the proportion lot B was to bear. *Held*, that the foreclosure did not determine the question of an apportionment, for neither the purchaser nor the mortgagee was bound to litigate with plaintiff, nor as between themselves, whether such mortgage had been apportioned.

2. SAME—SURPLUS—DISTRIBUTION.

Neither did the fact that the payment for the release of lot B from the mortgage on lots B and C was not made within the year entitle the mortgagee of the entire tract to any portion of such surplus on the ground that the agreement to apportion on payment within the year had failed; for having released lot B, from which such surplus was derived, from his mortgage, he was precluded from claiming it.

Appeal from judgment on report of referee.

Action by Enoch L. Fancher against Anna D. Bonfils and others for foreclosure of a mortgage. From an order in surplus proceedings, confirming the referee's report directing payment to claimant Jacob A. Zimmerman of the surplus arising from the sale in the foreclosure suit, Ruel W. Poor, trustee, appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Thomas B. Adams, for appellant.
Payson Merrill, for respondent.

PATTERSON, J. This appeal is from a final order awarding certain surplus moneys, arising from the sale of real property under a decree of foreclosure, to Mr. Zimmerman, one of the claimants. The other claimant is Mr. Poor, trustee for the Garfield National Bank. The controversy between these claimants arises out of peculiar and somewhat complicated dealings respecting mortgages and liens upon a tract of land situate on 179th street, between Webster and Vanderbilt avenues, in the city of New York. In 1896 the land was owned by Mr. Bonfils. It appears to have been separated into a number of independent parcels, of irregular shapes and dimensions, and marked on a map contained in the record as parcels "A," "B," "C," "D," "E," "F," and "G." On the 10th of January, 1896, Mr. Bonfils entered into a contract with one Francisca Moskoski to sell to her so much of the tract as, from the description of the premises in the contract, lies within the lines of parcels A, B, and E. In that contract it is stated that the premises to be conveyed to Moskoski are subject to mortgages amounting to $9,000. It would seem that in this transaction Moskoski acted for, and was the representative of, Zimmerman. At all events, Moskoski subsequently conveyed the premises to Zimmerman. The consideration of the conveyance to Moskoski was that she gave in exchange to Bonfils certain premises in West Fifty-First street, in the city of New York, and in addition thereto a mortgage for $7,000 on other premises in West Fifty-First street; but it seems that that mortgage was turned into money, and $6,300 was given to Mr. Bonfils instead of the mortgage. At the time this transaction took place, Mr. Poor, as trustee, held a mortgage, originally for $46,000, which covered the whole tract, but which at the time of these proceedings was reduced to the principal sum of $7,700. Mr. Jackson held another mortgage on the whole premises. There were also liens to a considerable amount on the whole tract for unpaid taxes and assessments. Plot A appears to have been subject to a mortgage of $4,500. Parcel B was subject to another mortgage for $6,500, and that mortgage also covered plot C. That is the mortgage foreclosed in this action, and from the sale under the decree of foreclosure of which the surplus arises. Plot E was subject to a mortgage for $4,800, and that mortgage was also a lien upon plot F. It appears that, with the incumbrances on the property in this situation, an agreement was made between Bonfils and Moskoski by which such incumbrances should be rearranged,

and the rights of the parties reconstituted under them. Mr. Poor and Mr. Jackson became assenting parties to this rearrangement, and they agreed to and did release from the liens of their respective mortgages the parcels to be conveyed to Moskoski. Mr. Poor testified in this proceeding that he did so at the invitation of Mr. Bonfils, and that the inducement to him to give the release was an agreement to apply the $6,300 above referred to to the payment of the outstanding taxes and assessments, which amounted to $5,500, and the application of the balance of the $6,300, viz. $800, to the diminution of the indebtedness represented by his mortgage. The transaction was consummated, and a conveyance made to Moskoski; whereupon the taxes and assessments were paid in full, and the balance of $800 was given to Mr. Poor to apply on the mortgage. It had been further agreed between the holders of the Fancher (then called the Miller) mortgage that parcel B should be relieved from the lien of that mortgage on the payment of $2,400 and taxes within one year, and the holder of the $4,800 mortgage agreed to release plot E from the lien of that mortgage on the payment of $2,100 and taxes within a year. Mr. Poor associated himself with that arrangement and became bound by it. He consented to and requested the execution of the agreements by which the holders of the mortgages referred to agreed to the apportionment. All the agreements were put upon record, including releases of the premises conveyed to Moskoski from the liens of the Poor and the Jackson mortgages. It will be remembered that the conveyance to Moskoski was to be subject to mortgages aggregating $9,000.

It results from what has been above stated that the amount of $9,000 was made up of items which are properly stated in his brief by the counsel for Mr. Zimmerman as follows: The whole of the mortgage of $4,500 on plot A, $2,400 of the Fancher mortgage as applicable to plot B, and the $2,100 of the $4,800 as applicable to plot E; the whole amounting to $9,000. The learned counsel for the claimant Poor insists that there was no apportionment of the $6,500 mortgage, and places his contention upon two grounds: First, that it was so decided by the decree of foreclosure of that mortgage, and that, both Poor and Zimmerman having been defendants and adverse parties in that foreclosure suit, the decree determines their rights, and is binding upon them; second, that the $2,400 not having been paid on the Fancher mortgage within a period of one year, any agreement or understanding for the apportionment of that mortgage came to an end, and that Poor was not bound to any stronger obligation than existed between the holders of that mortgage and Mr. Bonfils.

The decree does not determine the question of the apportionment of this mortgage. The plaintiff, Fancher, had a clear right to foreclose that mortgage as a blanket mortgage covering the premises. Neither Mr. Poor nor Mr. Zimmerman was bound to litigate with the plaintiff, nor as between themselves, the question whether that mortgage had been separated into two mortgages,—one for $2,400 on plot B, and one for $4,100 on plot C. As between themselves, their respective rights as lienors subsequent to Fancher (Miller) were

transferred to the surplus. It was not necessary, to determine all the rights of the parties, that they should litigate the matters in difference between them in the main foreclosure suit. Nor do we think that the point is well taken that the $2,400 of the Fancher mortgage not having been paid within a year changes the relation of Mr. Poor to the surplus moneys. Moskoski took the premises from Bonfils under an agreement for the release of plot B from Poor's mortgage. There was a consideration paid for that release. All the taxes and assessments, amounting to $5,500 on the whole property covered by Poor's mortgage, were paid, and, in addition, $800 was paid in cash on the principal of that mortgage. Moskoski furnished the money for this purpose. It was under such circumstances that Moskoski took the conveyance. Poor was paid for his release, and the large amount of taxes and assessments was removed from the property, and his security benefited to that extent. As between Zimmerman, succeeding to Moskoski, and Poor, the situation respecting the surplus is therefore the following: The plots B and C were separately sold under the decree in foreclosure of the Fancher mortgage. Plot C was sold first, and brought $4,500, and plot B was then sold, and brought $5,000. Plot B was released from Poor's mortgage. Plot C sold for $4,500, and was subject to taxes and interest amounting to $519.06. The amount charged·on plot C of the mortgage foreclosed, namely, $4,100, made the whole amount chargeable, as against that plot, $4,619.06; showing, as counsel for Mr. Zimmerman has pointed out, that plot C did not sell for enough to pay the amount chargeable against it, with interest, and that, therefore, the surplus moneys must have arisen from the proceeds of plot B, after deducting from such proceeds $2,400 and interest chargeable upon it and the expenses of the suit. We are of opinion that the release given by Mr. Poor of plot B from the lien of his mortgage was, under all the circumstances and equities of this case, an absolute release, and that the referee was right in awarding the surplus to Mr. Zimmerman.

The order appealed from should be affirmed, with costs. All concur.